**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SHORES OF PANAMA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 07-00602-KD-B** |
| ) | |
| **SAFECO INSURANCE CO.** ) | |
| **OF AMERICA,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on Defendant Safeco Insurance Company of America's

("Safeco") Motion to Stay pending arbitration (Docs. 26, 27, 61, 70), Defendants C.F. Jordan

Residential, L.P. ("Jordan Residential") and C.F. Jordan, L.P.'s ("Jordan") joint Motion to Compel

Arbitration and Stay Lawsuit (Docs. 44, 45) and the parties' responses and replies thereto, including

all supporting materials.   Defendant Safeco's Motion to Stay is **GRANTED** and the Jordan

Defendants' Motion to Compel and Stay is **GRANTED.**

**I.     Background**

This case arises out of a dispute regarding a May 27, 2004 Construction Contract

("Contract") entered into between Plaintiff[1] and Defendant Jordan Residential[2] to build the first

phase of the Shores of Panama condominium project in Panama City Beach, Florida ("Project").

(Affidavit of Mike Miller at ¶ 6).[3]   The Contract provides, in relevant part, that it "represents the

---

[1]  Plaintiff is the owner of the Shores of Panama Project, a 709-unit high rise condominium
project in Panama City Beach, Florida.  (Affidavit of Mike Miller Aff. at ¶ 5).

[2]  Jordan Residential is a commercial general contractor; Jordan is an affiliated company with
Jordan Residential.  (Miller Aff. at ¶ 3).

[3]  Mike Miller is the Executive Vice-President for Jordan Residential.

entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral." (Contract Art. 1; Miller Aff. at ¶ 7). The Contract incorporates General Conditions, which form a substantive part or the Contract and are part of the "Contract Documents." (Contract Arts. 1, 9.1.2; Miller Aff. at ¶ 8). The Contract states that any controversy or claim "arising out of or related to" the Contract or the breach thereof shall be settled by arbitration, as the Contract adopts by reference, "The 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction[,]" ("General Conditions"), which states:

> \* \* \*
>
> A claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the claim.
>
> \* \* \*
>
> Any controversy or Claim arising out of or related to the Contract or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators, may be entered into any court having jurisdiction thereof . . . .

(Contract, General Conditions at ¶¶ 4.3.1 (Claims), 4.5.1 (Arbitration); Miller Aff. at ¶ 9). The Contract states that if Plaintiff terminates the Contract for cause, each of Jordan Residential's subcontracts will be assigned to Plaintiff, provided that it notifies the subcontractor that it is accepting the assignment. (Contract, General Conditions at ¶ 5.4 (Contingent Assignment of Subcontracts); Miller Aff. at ¶ 10).

As part of the Contract, Jordan Residential was required to issue a performance bond to Plaintiff covering work under the Contract. (Miller Aff. at ¶ 11). Jordan Residential and it surety, Defendant Safeco, issued the performance bond in June 2004; namely, Bond No. 6262554, ("Bond")

naming Plaintiff as obligee and Jordan Residential as principal, to assure Jordan Residential's performance of the Contract for construction of the Project. The Bond states that Jordan Residential and Safeco, as contractor and surety, bind themselves to Plaintiff (owner) for the performance of the Contract, "which is incorporated herein by reference." (Bond at ¶ 1; Miller Aff. at ¶ 12). The Bond also provides that "[i]f the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1." (Bond at ¶ 2). The Bond defines a Contractor Default as: "[f]ailure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract." (Id. at ¶ 12.3). The Bond provides further, that Plaintiff has no rights against the Bond if it commits an "Owner Default," which is defined as "[f]ailure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof." (Id. at ¶¶ 3, 12.4). Thus, the Bond only applies if there is no Contract default by Plaintiff (Owner Default) *and* Plaintiff properly notifies Safeco that it is considering declaring Jordan Residential in default (Contractor Default), Plaintiff then declares Jordan Residential in default and formally terminates the Contract, and Plaintiff agrees to pay the balance of the Contract price to Safeco in accordance with the Contract's payment requirements. (Bond at ¶¶ 1-3, 12.3, 12.4).

During the course of construction for the Project, many disputes arose between Jordan Residential and Plaintiff. As a result, on November 1, 2005, Jordan Residential filed the first demand for arbitration against Plaintiff, asserting claims for extra work and for a time extension to the Contract. (Miller Aff. at ¶ 14). Thereafter, Jordan Residential and Plaintiff prepared for the first arbitration hearings and Jordan Residential continued to perform its work under the Contract. (Id.

at ¶ 15).

On January 12, 2006, Plaintiff notified Jordan Residential and Safeco that it was "contemplating declaring a contractor default" under the Contract for Jordan Residential's material breach of the Contract due to its failure to supply labor, materials, equipment, supervision, and other things required of it to perform the work with the promptness, diligence, and workmanship required by the Contract documents.  (Doc. 37 at ¶ 15).  Following numerous communications, as well as meetings, between the parties – and based upon the Project architect's findings and certifications that Jordan Residential was allegedly not performing "in the best interest of the project" – Plaintiff notified Jordan Residential and Safeco on July 14, 2006, that it was terminating Jordan Residential's employment under the terms of the Contract.  (Id. at ¶ 38).  When Plaintiff terminated Jordan Residential, the work was not complete.  (Id. at ¶ 42).  Shortly after, Plaintiff was assigned Jordan Residential's subcontracts, in accordance with the Contract's General Conditions.  (Miller Aff. at ¶ 18; Contract, General Conditions, Art. 5.4).  Plaintiff alleges that it then made demands on Safeco for Safeco's performance on the Bond.  (Doc. 37 at ¶ 40-41).

In September 2006, Jordan Residential filed a second arbitration demand against Plaintiff for, among other things, breach of contract, wrongful termination, recovery of the Contract balance, and a time extension to the Contract.  (Miller Aff. at ¶ 24).  In the second arbitration, Plaintiff alleges similar claims to those in the present litigation – that Jordan Residential made misrepresentations in negotiating the Contract and that it interfered with subcontractor performance on the Project following termination.  (Id. at ¶¶ 24-25).

In the Fall of 2006, Jordan Residential prevailed in the first arbitration proceeding and obtained an award on approximately 75% of its claims, defeating Plaintiff's counterclaims and

obtaining attorneys' fees.  (<u>Id</u>. at ¶ 19).  On December 22, 2006, Safeco notified Plaintiff that it was denying Plaintiff's claim under the Bond.  (Doc. 37 at ¶ 44).  In March 2008, Plaintiff filed for protection under Chapter 11 of the U.S. Bankruptcy Code.  (Miller Aff. at ¶ 27).  Jordan Residential moved to lift the automatic stay and compel arbitration under the Federal Arbitration Act.  (<u>Id</u>. at ¶ 28).  Plaintiff requested that the dispute with Jordan Residential be removed from arbitration and decided in an adversarial proceeding in the bankruptcy court; the U.S. Bankruptcy Court for the Northern District of Florida ruled in Jordan Residential's favor and lifted the automatic stay and compelled Plaintiff to arbitrate the dispute.  (<u>Id</u>. at ¶¶ 29-30).

The arbitration hearing dates were scheduled for January 2009; however, Plaintiff initiated the present litigation against Jordan Residential, alleging contractual interference, fraud and misrepresentation.  (<u>Id</u>. at ¶ 31).  Specifically, Plaintiff filed a Complaint in the Circuit Court of Baldwin County, Alabama; Defendant removed the action to this Court in August 2007 on diversity grounds.  (Doc. 1).  This Court then denied Defendant Safeco's Motion to Transfer on January 8, 2008.  (Doc. 21).  On May 14, 2008, Safeco filed the present Motion to Stay.  (Doc. 27).  On June 25, 2008, Plaintiff filed a First Amended Complaint adding Defendant Jordan, and asserting claims against both Jordan Residential and Jordan, as well as alleging additional claims against Safeco, for breach of contract, breach of implied covenant of good faith, bad faith, misrepresentation, fraudulent suppression and contractual/business interference.  (Doc. 37).

II.     **Analysis**

A.     **Applicable Case Law**

       The Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 1 et seq., expresses the strong national preference for arbitration of disputes, and must be enforced whenever possible.  See, e.g., Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003) (citing Green Tree-Financial Corp. of Ala. v. Randolph, 531 U.S. 79 (2000)).  As a matter of federal law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."  Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  The FAA was designed to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate" and to put the agreements "upon the same footing as contracts."  Volt Info Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 474 (1989).  The Act states that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Generally, the FAA's preference for arbitration preempts state laws which would otherwise render arbitration agreements unenforceable.  See, e.g., Volt, 489 U.S. at 473.  However, even though there is a preference for arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted).  Thus, as a general rule, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."  Id. (citing to Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).

To decide whether to grant a motion to compel arbitration, district courts apply a two-pronged analysis. See, e.g., Patriot Mfg. Inc. v. Dixon, 399 F. Supp. 2d 1298, 1300-1301 (S.D. Ala. 2005). First, the court must determine whether the parties agreed to arbitrate their disputes. See, e.g., Mitsubishi Motors, 473 U.S. at 626; Klay v. Pacificare Health Sys., Inc., 389 F.3d 1191, 1200 (11th Cir. 2004). Second, if the court finds that the parties agreed to arbitrate, the court must consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Mitsubishi Motors, 473 U.S. at 628. "In determining whether the parties agreed to arbitrate a particular dispute, courts consider: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that agreement." Patriot Mfg., 399 F. Supp. 2d at 1301 (internal citations omitted). "To resolve these issues, courts apply state law principles relating to ordinary contract formation and interpretation, construed through the lens of the federal policy favoring arbitration." Id. See also Klay, 389 F.3d at 1202 (providing that "[a]rbitration is at its core a matter of contract . . . ").

Additionally, courts have addressed motions to stay and compel arbitration related to non-signatories, such as sureties. For example, in St. Paul Fire & Marine Ins. Co., Inc. v. La Firenza, LLC, 2007 WL 2010759, *2-4 (M.D. Fla. Jul. 6, 2007) (Slip Copy), the Middle District of Florida noted that ". . . although St. Paul is not a party to the arbitration proceeding, given its relationship to Core as its principal under the bond, the same policy considerations favoring the resolution of disputes through arbitration support a stay of this declaratory action." The Court specified that:

* * *

"[W]here a surety has actual notice of arbitration proceedings instituted against its principal, the surety will be bound by an arbitration determination against its principal...." Fewox v. McMerit Constr. Co., 556 So.2d 419, 425 (Fla. 2d DCA 1989). . . . "As a general premise, '[a]rbitration is especially appropriate in situations involving issues that are unique to certain industries and which require specialized

-7-

knowledge for their resolution'." Id. at 1223 (quoting Lake Plumbing, Inc. v. Seabreeze Constr. Corp., 493 So.2d 1100, 1102 (Fla. 2d DCA 1986)). "[T]he construction industry is such an industry." Id.

Florida courts have stayed litigation pending arbitration where it cannot be said that "resolution of the arbitrable claims will have no effect" on the pending litigation. Am. Int'l Group, Inc. v. Cornerstone Bus., Inc., 872 So.2d 333, 338 (Fla. 2d DCA 2004) (citing Okeelanta Corp. v. U.S. Sugar Corp., 712 So.2d 814, 815 (Fla. 2d DCA 1998)). "Where the claims involving a third party are 'based on the same operative facts and are inherently inseparable' from the claims subject to arbitration," a stay is appropriate. Id. (citing Harvey v. Joyce, 199 F.3d 790, 795 (5th Cir.2000)). . . . Where an arbitration will eliminate issues in a related action filed against a surety on a bond, the bond litigation should be stayed to avoid unnecessary litigation. See Kidder Elec. of Fla. v. U.S. Fid. & Guaranty, 530 So.2d 475, 477 (Fla. 5th DCA 1988). Finally, there is no conceivable prejudice to St. Paul in staying this action until the resolution of the arbitration proceeding.

* * *

In Florida, sureties are bound to arbitrate disputes where the bond incorporates an underlying contract containing an arbitration provision. Henderson Invest. Corp. v. Int'l Fid. Ins. Co., 575 So.2d 770, 772 (Fla. 5th DCA 1991) ("It is a general rule of contract law that where a writing expressly describes another document, the other document is to be interpreted as part of the writing.") Id. at 771 (citing OBS Co., Inc. v. Pace Constr. Corp., 558 So.2d 404 (Fla.1990)); St. Paul Fire & Marine Ins. Co. v. Woolley/Sweeney Hotel, 545 So.2d 958 (Fla. 4th DCA 1989); U.S. Fid and Guar. Co. v. West Point Constr. Co., Inc., 837 F.2d 1507 (11th Cir.1988) (surety bound to submit its dispute to arbitration by virtue of incorporation of subcontract containing general arbitration clause into performance bond); Firemen's Ins. Co. of Newark, N.J. v. Edgewater Beach Owner's Assoc., Inc., 1996 WL 509720, at *2 (N.D. Fla. June 25, 1996) ("[i]t is well settled that where a performance bond incorporates the provisions of a contract, the arbitration provisions of the contract are made a part of the bond and are applicable to disputes involving the surety").

. . . . "[a] bond is a contract, and, therefore, a bond is subject to the general laws of contracts." Id. at 197; see also Auto Owners Ins. Co. v. Travelers Cas. & Surety Co., 227 F. Supp. 2d 1248, 1265 n. 24 (M.D. Fla. 2002) ("the incorporation of an arbitration provision arguably does not enlarge a surety's obligation and merely requires that the parties procedurally adjudicate the alleged breach of the construction contract and claim pursuant to the bond through arbitration rather than a lawsuit").

Id. at *2-4 (emphasis added).

Moreover, in Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109 (11th Cir.

2001) the Eleventh Circuit discussed the "arising out of or relating to" arbitration language:

* * *

> Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause. <u>Chastain v. Robinson-Humphrey Co.</u>, 957 F.2d 851, 854 (11th Cir.1992). Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
>
> The arbitration clause relied on by WTC calls for arbitration of "any disputes arising out of or relating to" the lease between WTC and TMI. Although this language is broad, it is not as broad as a clause requiring arbitration of "any dispute between them or claim by either [party to the contract] against the other." <u>Brown v. ITT Consumer Financial Corp.</u>, 211 F.3d 1217, 1221 (11th Cir. 2000). The "arising out of or relating to" language has proved especially problematic in cases like the pending one where the dispute concerns a tort (TMI's alleged tortious interference with the contract between WTC and Telecom Italia) alleged to be "related to" a contract with an arbitration clause (the WTC-TMI lease). One commentator has noted:
>
>> The first bar to arbitrability is based on the notion that parties to an arbitration agreement should be compelled to arbitrate only those torts contemplated by the arbitration agreement. Unfortunately, the standard arbitration clause found in most commercial contracts broadly states that "any controversy or claim arising out of, or relating to this agreement, or the breach thereof[,]" shall be settled by arbitration. If one party commits a tort against the other, the inevitable question is whether this broad, general language of the arbitration agreement is sufficient to encompass tort claims. The longstanding rule is that where the arbitration clause is broad, the tort claim will be arbitrable if the claim is either directly or indirectly related to the subject matter of the contract.
>
> . . . . The question remains: when is a dispute "related to" the "subject matter" of the contract?

<u>Id.</u> at 1114-1116.  After discussing case law addressing that question, the Court concluded that the

answer could be found "by focusing on whether the tort or breach in question was an immediate,

foreseeable result of the performance of contractual duties[]" as "[d]isputes that are not related-with

at least some directness-to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." Id. at 1116.

**B.    Application**

**1.    Defendant Safeco's Motion to Stay**

Plaintiff asserts claims against Safeco for breach of contract, breach of implied covenant of good faith, bad faith, misrepresentation, fraudulent suppression and contractual/business interference.  Safeco, the surety in this case, contends that the litigation is due to be stayed because a second arbitration, between Plaintiff and Defendant Jordan Residential, is pending, and all of Safeco's obligations to the Bond are secondary to those of Jordan Residential (i.e., that Safeco is only liable if Jordan Residential is liable).[4]  Safeco asserts that the claims against it in this case are thus inseparable from, and inextricably intertwined[5] with, the issues in arbitration, and that to litigate would reach the merits of the arbitration dispute.  Safeco adds that the claims by Plaintiff "merely supplement" the fundamental claims in the arbitration, and that the Bond expressly incorporates the Contract (and its arbitration agreement) by reference, even though Safeco is a non-signatory.

In response, Plaintiff contends that the parties are not identical in the pending arbitration and that additional tort claims against Safeco are unrelated to the arbitration.[6]  Plaintiff asserts as well,

---

[4]  The Bond states that if Jordan Residential performs the Contract, the Safeco will have no obligation under the Bond except to participate in required conferences, and that Safeco's obligations arise only when there is no owner (Plaintiff) default.

[5]  Under the doctrine of "intertwining," if arbitrable and non-arbitrable claims are closely related, the "doctrine of equitable estoppel operates to prevent a signatory to an arbitration agreement from frustrating arbitration of a related claim against a nonsignatory where the nonsignatory seeks arbitration." Ex parte Tony's Towing, Inc. 825 So. 2d 96, 98 (Ala. 2002).

[6]  Interestingly, the Court notes that in correspondence dated April 6, 2006, Plaintiff's counsel stated that "we believe it would be in everyone's best interest if Safeco were to intervene in the arbitration and, accordingly, would urge you to do so."  (Doc. 27 at Ex. 6).

that the FAA is inapplicable because Safeco is a non-signatory, is not entitled to obtain a stay and moreover, has not met its burden for the Court to enter a discretionary stay.  Plaintiff adds that resolution of matters in the arbitration with Jordan Residential will not resolve the issues here, because the issues differ and Safeco owes independent contractual duties to Plaintiff and failed to fulfill those duties (namely, that Safeco's obligations were triggered when it notified Safeco that it was considering declaring a Contractor Default and an arbitral determination that Jordan Residential performed would not be determinative of the issue of whether a Contractor Default arose from Jordan Residential's failure to comply with the terms of the Contract).

"Where an arbitrator will eliminate issues in a related action filed against a surety or a bond, the bond litigation should be stayed to avoid unnecessary litigation."  La Firenza, 2007 WL 2010759, *3.  Additionally, a surety's liability to an obligee is coextensive with that of its principal; thus, if the principal is not liable, neither is the surety.  See, e.g., SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., Inc., 931 So.2d 706 (Ala. 2005).  Here, the Bond between Safeco and Jordan Residential provides that if Jordan Residential, the Contractor, performs the Contract, neither have obligations under the Bond, except to participate in conferences.  The Bond provides further, that Plaintiff has no rights against the Bond if it commits an Owner Default under the Contract.  Indeed, Plaintiff has rights against the Bond if, and when, Jordan Residential, the Contractor, commits a Contractor Default under the Contract.  That event triggers the Bond and Safeco's obligations thereunder.  Defendants contend that Jordan Residential did not commit a Contractor Default and fully performed the Contract with Plaintiff.  Defendants assert that in contrast, Plaintiff committed numerous Owner Defaults.  From this, Safeco claims that Plaintiff's rights against the Bond and Safeco's obligations thereunder, were never triggered.  *However, whether Plaintiff, or Jordan*

*Residential, defaulted under the Contract, is the issue presently before the arbitration panel.*

While a stay of litigation (to allow arbitration to proceed) under the FAA, 9 U.S.C. § 3, is typically available only to parties/signatories to an arbitration agreement, courts have found in cases where a surety has issued a contractor's bond, that the surety may move to stay (*i.e*., the fact that the surety is not a party/signatory to the agreement will not preclude it from obtaining a stay). See, e.g. U.S. for Use and Benefit of Com. Coatings Corp. v. Continental Cas. Co., 214 F. Supp. 949 (D.P.R. 1963); Kidder Electric, Inc. v. U.S. Fidelity & Guar. Co., 530 So.2d 475, 477 (Fla. App. 5th Dist. 1998). Moreover, the FAA mandates that judicial proceedings be stayed where issues to be addressed in such proceedings are "referable to arbitration." 9 U.S.C.A.§ 3. Further, if a suit against a non-signatory to an arbitration agreement is based upon the same operative facts and is inherently inseparable from the claims against a signatory, the court may stay litigation pending arbitration where the litigation would undermine the arbitration and thwart federal policy in favor of arbitration. See, e.g., Hill v. G.E. Power Systems, Inc., 282 F.3d 343, 347 (5th Cir. 2002).[7] Finally, the stay provision can be applied to a non-signatory such as Safeco, where – as here – the issues presented in the non-party-party litigation, if litigated, would render the arbitration redundant and thwart the federal policy favoring arbitration. See, e.g., La Firenza, 2007 WL 2010759, *3; Hill, 282 F.3d at 348; Harvey v. Joyce, 199 F.3d 790, 795-796 (5th Cir. 2000); Subway Equipment Leasing Corp. v.

---

[7] In Hill, the Fifth Circuit explicitly ruled that Section 3 extended to non-signatories, by reasoning that any non-signatory granted a discretionary stay under the court's inherent powers also must be entitled to that stay under Section 3:

> A suit against a nonsignatory that is based on the same operative facts and is inherently inseparable from the claims against a signatory will always contain 'issue(s) referable to arbitration under an agreement in writing,' and thus will satisfy the requirements of Section 16(a)(1).

282 F.3d at 347 (citing 9 U.S.C. § 3).

-12-

Forte, 169 F.3d 324, 329 (5th Cir. 1999).

The grounds for permitting a stay are significant here, as Plaintiff's claim against Safeco (the surety) cannot be litigated without reaching the merits of the dispute between Plaintiff (the Owner) and Jordan Residential (the Contractor). However, as noted *infra*, the Plaintiff-Jordan Residential construction dispute is subject to, and is presently part of, an ongoing binding arbitration proceeding. The pending arbitration will address Jordan Residential's wrongful termination and breach of contract claims (including whether Plaintiff properly terminated Jordan Residential, whether Jordan Residential defaulted and whether Plaintiff defaulted, among other things). This is significant because Safeco's obligations under the Bond are not triggered unless and until Jordan Residential defaults under the Contract, and notably, are not ever triggered if Plaintiff defaults. Any duties that Safeco owes to Plaintiff derive from the triggering of the Bond itself – which is tied to a default event under the Contract (*i.e.*, performance or non-performance). In this sense, to the extent that Plaintiff claims that Safeco failed to perform its obligations under the Bond and investigate Plaintiff's claims that Jordan Residential was failing to perform or otherwise comply with the Contract underlying the Bond, that purported failure is necessarily predicated upon the event of Jordan Residential's performance of the Contract (*i.e.*, whether or not there was a Contractor Default). Plaintiff's claim against Safeco then, cannot be litigated without reaching the merits of the construction disputes involving Jordan Residential: the same Contract, Project, claims, issues, evidence, witnesses, etc., are common to both proceedings. And while Plaintiff endeavors to oppose Safeco's motion by asserting that Safeco's obligations were triggered by Plaintiff's notification of Contractor Default, again, this assertion wholly ignores the fact that those obligations never arose if there was an Owner Default. As such, while a non-signatory to the Contract between Plaintiff and

-13-

Jordan Residential which provides for arbitration, Safeco (as the surety for the Bond executed pursuant to that Contract and which expressly incorporates the Contract) is entitled to move for a stay of this litigation.

Moreover, Plaintiff contends that Safeco is not entitled to a discretionary stay because it has not met the heavy burden required to rebut the presumption in favor of this action proceeding simultaneously with the arbitration proceeding. While Plaintiff is correct that Safeco's mere use of the phrase "pending arbitration," standing alone, does no more to close the judicial doors than "open sesame" can do the reverse, Safeco has established to the Court's satisfaction that a stay of this litigation is proper, for the aforementioned reasons.

Nevertheless, while the grounds for a stay exist, the Court's analysis does not end there, because the Eleventh Circuit has specifically held that when a performance bond incorporates a contract that requires arbitration, *the surety is obligated to arbitrate*. See, e.g., U.S. Fidelity and Guar. Co. v. West Point Const. Co., Inc., 837 F.2d 1507, 1508 (11th Cir. 1988); Transamerica Premier Ins. Co. v. Collins & Co., General Contractors, Inc., 735 F. Supp. 1050, 1051 (N.D. Ga. 1990). Through such "incorporation by reference," a surety binds itself to participate in, and be bound by, arbitration regarding disputes under construction contracts. Id. See also e.g., U.S. Sur. Co. v. Hanover R.S. Ltd. Partnership, 543 F. Supp. 2d 492, 495-496 (W.D.N.C. 2008) (holding that an arbitration clause in a subcontract which was incorporated by reference into a bond and which required arbitration of all disputes arising out of or related to the subcontract, required arbitration of surety's defenses); Von Engineering Co. v. R.W. Roberts Const. Co., Inc., 457 So.2d 1080 (Fla.

App. 5th Dist. 1984).[8]  Safeco itself even highlighted its obligation to arbitrate in its Supplemental

Memorandum.  (Doc. 70).  In its Supplemental Memorandum, Safeco cites West Point, recognizing

the Eleventh Circuit's ruling that parties under a surety bond are obligated to arbitrate bond claims

where the bond incorporates by reference a contract requiring arbitration.  Safeco, however, then

asserts that it is not obligated to arbitrate based upon a 1979 New York state case,[9] because the

---

[8]  See also e.g., Ohio Casualty Ins. Co. v. City of Moberly, 2005 WL 2491461, *3 (E.D. Mo. Oct. 7, 2005) (holding that a surety, on bond incorporating arbitration clause with "arising out of or relating to" language, was obligated to arbitrate all of its defenses, specifically including its so-called "personal defenses" under the bond); Jewish Federation of Greater New Orleans v. Fidelity & Deposit Co. of Md., 273 F.3d 1094 (5th Cir. 2001) (per curiam) (citing the strong presumption in favor of arbitrability under the FAA, the Fifth Circuit "conclude[d] that [the surety's time bar personal defense under the performance bond was] a 'controversy ... related to the Contract'" and ordered arbitration thereof); U.S. for Use and Benefit of Newton v. Neumann Carribean Intern., Ltd., 750 F.2d 1422 (9th Cir. 1985) (holding that both the contractor and the surety must submit to arbitration); Exchange Mut. Ins. Co. v. Haskell Co., 742 F.2d 274, 276 (6th Cir. 1984) (holding that arbitration between surety and obligee is required and the surety was compelled to arbitrate when the performance bond incorporates by reference a contract containing an obligation to arbitrate); J & S Const. Co., Inc. v. Travelers Indem. Co., 520 F.2d 809 (1st Cir. 1975) (same).  See also Matter of Arbitration Between S & R Co. of Kingston and Latona Trucking, Inc., 984 F. Supp. 95, 99-100 (N.D.N.Y. 1997) (citing, with approval, the Eleventh Circuit's holding in West, that a surety agreed to arbitrate when the performance bond referenced a subcontract that in turn referenced the general contract containing a broad arbitration clause); Firemen's Ins. Co. of Newark, N.J. v. Edgewater Beach Owner's Ass'n, Inc., 1996 WL 509720, at *3 (N.D. Fla. June 25, 1996) (finding that an incorporation clause in a bond gave a surety a right to participate in a pending arbitration between the principal obligor and the obligee); Hoffman v. Fidelity & Deposit Co. of Md., 734 F. Supp. 192, 194-195 (D.N.J. 1990) (concluding that the Third Circuit would follow the Eleventh, Sixth, Fifth, Second and First Circuits and would require a surety to arbitrate its defenses to liability on the Bond where the bond incorporates by reference a contract containing an arbitration clause); Cianbro Corp. v. Empresa Nacional de Ingenieria y Technologia, S.A., 697 F. Supp. 15, 18 (D. Me. 1988) (stating that "[w]here two levels of incorporation by reference still result in a surety's duty to arbitrate, incorporating by reference an arbitration clause directly should certainly compel the surety's participation[]"); Travelers Cas. and Sur. Co. of America, Inc. v. Long Bay Management Co., 792 N.E.2d 1013, 1015-1018 (Mass. App. Ct. 2003) (recognizing the law that a surety is generally obligated to arbitrate a dispute with a contractor or developer, if the bond incorporates by reference an underlying construction contract that contains an arbitration clause, thus holding that because bond incorporated such clause in the construction contract by reference, surety had right to compel arbitration); Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co., 8 Cal. Rptr. 2d 587, 589-593 (Cal. App. 2d Dist. 1992) (holding that an arbitration clause in contract incorporated into performance bond and thus required arbitration all of the surety's defenses, whether arising under the contract or the bond).

[9]  Safeco, citing Fid. & Deposit Co. v. Parsons & Whittemore Contractors Corp., 397 N.E.2d 380, 382 (N.Y. 1979), asserts that a "critical distinction must be drawn between disputes arising under the [Contract] . . . and possible unrelated differences which may arise between [Safeco] and [Plaintiff] as to

-15-

disputes between Plaintiff and Safeco under the Bond are different than those arising under the Contract.  Safeco explains that its defenses related to Plaintiffs' breach of the Bond rest strictly on the terms of the Bond and require no reference to the Contract or the arbitrable disputes arising under same.  By contending as such, Safeco is asking this Court to enter a stay because the issues relating to the Bond and Contract are inextricably linked or intertwined, but to simultaneously ignore Eleventh Circuit precedent and refrain from compelling arbitration because the issues are different.  Safeco can neither disregard precedent, nor have it both ways.

Thus, while Safeco does not seek an order compelling arbitration, the Court finds that compelling Safeco to participate in the ongoing arbitration is proper under the circumstances of this case.  As noted *supra*, the Contract between Plaintiff and Jordan Residential includes an arbitration clause providing for arbitration of any controversy or claim "arising out of or related to the Contract or the breach thereof." (Contract, General Conditions at 4.5.1).  The Bond provides that Jordan Residential and Safeco bind themselves to Plaintiff for the performance of the Contract "which is incorporated herein by reference." (Bond at ¶ 1).  Any defenses then, raised by Safeco in this litigation initiated by Plaintiff, whether allegedly "arising out of" the Bond or the Contract, at the very least, are "related to" or have a "significant relationship" to the Contract, *as the Bond's very purpose is to ensure Jordan Residential's performance under the Contract and the Bond incorporates the terms of the Contract without limitation*.  See, e.g., Hanover, 543 F. Supp. 2d at 495.  Moreover, the fact that Safeco, as the surety, seeks an order staying this case so that the arbitral panel can determine whether the Bond was triggered and thus Safeco's obligations and rights thereunder, underscores the rationale for compelling arbitration.  This, coupled with Eleventh Circuit

---

the liability of [Safeco] under the terms of [the Bond]."  This case has no precedential value in this Court, and moreover, is contrary to a significant body of federal case law.

precedent finding that sureties are *obligated* to arbitrate bond claims where the bond incorporates by reference a contract requiring arbitration, supports an order compelling Safeco to arbitrate. Finally, given federal courts presumption in favor of arbitrability, as well as concerns of judicial economy, Plaintiff's liability under the Bond and surety defenses are issues referable to arbitration under the Contract and these issues should all be adjudicated in the pending arbitration.[10]

The strong federal policy in favor of arbitration also backs this Court's decision. The Supreme Court has adopted the position that questions of arbitrability must be addressed with a healthy regard for the federal policy forming arbitration. See, e.g., Moses H. Cone, 460 U.S. at 24-25 (providing that "the [Federal] Arbitration Act establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or alike defense to arbitrability[]"). The Eleventh Circuit cited this federal pro-arbitration policy as

_____

[10]  In so finding, the Court concludes that Safeco's assertion – that because Plaintiff has disregarded any existing right to compel arbitration by filing suit, it has waived any such right – lacks merit. A claim for waiver of the right to compel arbitration cannot arise unless and until a party seeks to invoke that right. Plaintiff initiated this litigation against Safeco and the Jordan Defendants precisely because it opposes arbitration, and does not seek to invoke the right to compel arbitration. In this sense, Safeco's waiver argument is simply irrelevant. Moreover, merely litigating is not enough to waive the right to arbitration – unless a party has substantially invoked the judicial process to its opponent's detriment; and under the totality of the circumstances has acted inconsistent with the arbitration right and in so acting, has prejudiced the other party. "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate *and* this participation results in prejudice to the opposing party . . . Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." Morewitz v. West of Eng. Ship Owners Mut. Protection & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir.1995), cert. den., 516 U.S. 1114 (1996) (emphasis added). See also S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990); Ryan's Family Steakhouse, Inc. v. Kilpatric, 2006 WL 3691554 (Ala. Civ. App. Dec. 15, 2006), cert. den., 2007 WL 867221 (Ala. 2007). Further, the burden of proving waiver rests heavily upon the shoulders of the party seeking to prove waiver. See, e.g., Marubeni Corp. v. Mobile Bay Wood Chip Ctr., 2003 WL 22466216, *14 (S.D. Ala. June 16, 2003). Even if Plaintiff had tried to invoke the right to compel arbitration, Safeco has failed to articulate any grounds for prejudice and moreover, does not even assert that it has been prejudiced due to the filing of this litigation.

support for its holding in <u>West Point</u>, 837 F.2d at1508, that a surety is bound to arbitrate under an arbitration agreement incorporated by reference into a performance bond ("[o]ur conclusion is supported by the strong policy favoring arbitration expressed by Congress in the Federal Arbitration Act").  This policy also lent support to the Fifth Circuit's holding in <u>J.S. & H. Const. Co. v. Richmond County Hospital Auth.</u>, 473 F.2d 212, 214-215 (5th Cir. 1973) (stating that "[i]n the Federal Arbitration Act . . . Congress has expressed a strong policy favoring arbitration before litigation, and the courts are bound to take notice of this broad policy as well as specific statutory provisions in dealing with arbitration clauses in contracts").[11]  Thus, to the extent that Safeco believes that it cannot be compelled to arbitrate, the Court does not agree.  In issuing bonds that expressly incorporate a contract with an arbitration clause, Safeco has voluntarily agreed to arbitrate disputes consistent with that clause.  This Court's order to Safeco to participate in the arbitration is consistent with Safeco's voluntary incorporation by reference of the arbitration clause in the Bond.

### 2.    The Jordan Defendants' Motion to Compel and Stay

The Jordan Defendants seek an order compelling arbitration and entry of a stay of this case. In so doing, the Jordan Defendants contend that the Contract between Plaintiff and Jordan Residential requires arbitration of disputes "arising out of or related to" the Contract, and that this includes both contract and tort claims, adding that Plaintiff is attempting to avoid this requirement by filing claims against Jordan's affiliate company, C.F. Jordan, L.P. ("Jordan"), a non-signatory. The Defendants assert that Plaintiff's allegations are currently the subject of a pending arbitration, including the claim that Jordan Residential interfered with subcontractor performance following

---

[11] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent on the Eleventh Circuit. <u>Bonner v. City of Prichard, Alabama</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

termination.  Jordan Residential claims further, that while its affiliate company, Jordan, is not a signatory, the claims are "intertwined" and "arise from" the same facts, and thus, are subject to arbitration.  Jordan Residential adds that all claims relating to the Bond and subcontracts are also intertwined and depend upon the determination of liability in the pending arbitration.  Finally, Jordan Residential contends that there is no dispute that there is a valid arbitration agreement with Plaintiff, noting that the parties have already been arbitrating disputes under that agreement for several years in two separate arbitrations (including a pending arbitration which will be heard in January 2009), and that Plaintiff's recent assertion of tort claims is no more than an assertion of claims related to the Contract between them.  Thus, the Jordan Defendants seek an order compelling Plaintiff to arbitrate and staying this litigation pursuant to 9 U.S.C. § 4.  See, e.g., Dunn Const. Co., Inc. v. Sugar Beach Condominium Ass'n, Inc., 760 F. Supp. 1479, 1482 (S.D. Ala. 1991).

In response, Plaintiff has conceded that Defendant Jordan is entitled to arbitration as well as a stay of the fraud claim against it.[12]  The only claims that remain at issue then, are the contractual and/or business relationship interference claims against Jordan Residential – Counts Six and Eight – in which Plaintiff asserts that Jordan Residential intentionally interfered with its contractual and/or business relationships with its subcontractors (Count Eight) and with its contractual and/or business relationship with the surety, Safeco (Count Six).  (Doc. 37 at ¶¶ 85, 91).

The Court is mindful that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, and when parties to a contract agree to arbitrate – as is the case here – the FAA creates a presumption in favor of arbitrability, and so, parties must clearly express their

---

[12]  (Doc. 59 at 1, n.2).  Although plaintiff only refers to a singular fraud count, the court interprets plaintiff's statement as conceding arbitration for Counts 9 (misrepresentation) and 10 (promissory fraud) because no argument is made that these claims are not arbitrable.

intent to exclude categories of claims from their arbitration agreement.  See, e.g., Moses H. Cone, 460 U.S. 1, 24-25; Ivax Corp. v. B. Braun of America, Inc., 286 F.3d 1309, 1320 (11th Cir. 2002).  Tort claims and other non-contract claims, however, are "not automatically excluded from a contractual arbitration clause[,]" where the claims are "intimately founded in and intertwined with" the obligations in the contract.  See, e.g., McBro Planning and Development Co. v.  Triangle Electrical Const. Co., Inc., 741 F.2d 342, 344 (11th Cir. 1984).

      **a.**     **Plaintiff's interference claims regarding the subcontractors**

Plaintiff alleges that Jordan Residential engaged in a scheme to delay construction and inflate costs (*i.e.*, not honor the Contract).  As part of that scheme, Plaintiff asserts that Jordan Residential interfered with the subcontractors' efforts to perform their obligations and complete the Project on time and within budget.  Plaintiff argues that these claims relate to conduct *after* termination of the Contract, and as such, are not subject to the arbitration clause, do not depend upon the determination of the issues before the arbitration panel and can be determined without any consideration of the Contract.  (Doc. 37 at ¶¶ 12, 91).[13]

The subcontracts and subcontract relationships arose out of the Contract.  Specifically, the Contract provides as follows: each subcontract assignment for a portion of the work is assigned by the Contractor to the Owner provided that assignment is effective only after termination of the Contract by the Owner for cause pursuant to paragraph 14.2, and only for those subcontract agreements which the Owner accepts by notifying the subcontractors in writing; and assignment is

---

[13] As for Plaintiff's assertion that Jordan Residential interfered *before* the termination, that argument lacks merit.  The Contract provides that assignment is effective only after termination of the Contract.  (Contract, General Conditions at ¶ 5.4).  Plaintiff had no contractual relations with the subcontractors until after the Contract was terminated, and any purported pre-termination conduct simply cannot provide support for such an interference claim.

subject to the prior rights of the surety, if any, obligated under the Bond relating to the Contract. (Contract, General Conditions at ¶ 5.4).

Plaintiff contends that the Jordan Defendants' intentional interference with the subcontractors cannot be deemed "an immediate, foreseeable result of the performance of contractual duties[]" under the Contract, nor are they "related – with at least some directness – to performance of [those] duties." Telecom, 248 F.3d at 1116.  Plaintiff argues that the interference claims can be adjudicated without any consideration of the Contract between the parties because the claims arise from a different transaction and almost all of the tortious conduct, as to the subcontractors, occurred after termination of the Contract.  Plaintiff thus asserts that these claims do not actually depend upon, or arise out of, the Contract, and would exist even without the Contract.

Plaintiff's interference claims do not merely touch upon the Contract.  Had the Contract not been terminated and thus, the subcontracts assigned to Plaintiff, then Plaintiff would have had no contractual relations with the subcontractors that would be subject to interference by a third-party.  In other words, the "tort could not have occurred *but for* a breach of contract." Telecom, 248 F.3d at 1114 (emphasis added).  All of the subcontractors' duties regarding the Project stem from the Contract (*e.g.*, the timing, scope and effect of the assignment of the subcontracts to Plaintiff are governed by the Contract), and without the assignment, Plaintiff would have no cause of action.  Because the Contract requires all disputes arising out of or relating to the Contract to be subject to arbitration, any issues relating to or arising out of the assignment are governed by the Contract's arbitration provision as well.

The Court also notes, that for the interference claim to have any merit whatsoever, Plaintiff

must establish, as an initial matter, that the Jordan Defendants are "third-parties" or "strangers" to the contractual/business relationship.  See, e.g., Tom's Foods, Inc. v. Carn, 896 So.2d 443, 454 (Ala. 2004); Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1154 (Ala. 2003); Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So.2d 381, 385-386 (Fla. App. 4th Dist. 1999); Genet Co. v. Annheuser-Busch, Inc., 498 So.2d 683, 684 (Fla. App. 3rd Dist. 1986). This is because no cause of action for interference exists against one who is either a party to the contractual/business relationship, or one who has a beneficial or economic interest in, or control over, that relationship.  Id.  As such, this initial inquiry will certainly be determined by an analysis of the Contract and the parties' obligations under the Contract.

**b.    Plaintiff's interference claims regarding Safeco**

As stated *supra*, the Eleventh Circuit has held that when a performance bond incorporates a contract that requires arbitration, that incorporation of the contract expresses an intention of the parties (including the surety) to arbitrate disputes and arbitration is required.  See, e.g., West Point, 837 F.2d at 1508; Transamerica Premier, 735 F. Supp. 1050.

Plaintiff asserts that Jordan Residential interfered with plaintiff's relationship with its surety, Safeco.  This claim is due to be arbitrated for the same reasons set forth *supra*.  Additionally, the Bond incorporates the Contract requiring arbitration, and the parties' rights and duties under the Bond are tied to the Contract performance.  Specifically, there would have been no relationship between Safeco and Plaintiff, except for the Contract and Jordan Residential's performance or non-performance under same.  Jordan Residential and Safeco's liability under the Bond is entirely conditioned on both Plaintiff and Jordan Residential's performance under the Contract.  The claims related to such Contract performance are in arbitration, and if Jordan Residential prevails, then

-22-

Plaintiff will have no claim against Safeco in relation to the Bond.  In other words, the Bond and the Contract are inextricably intertwined.  See, e.g., West Point, 837 F.2d 1507.

Further, the Court finds unpersuasive Plaintiff's contention that because the Bond states that actions may be brought in a court of competent jurisdiction, arbitration is not appropriate.  See, e.g., Firemen's Ins. Co. of Newark, N.J. v. Edgewater Beach Owner's Ass'n, Inc., 1996 WL 509720, *3 (N.D. Fla. June 25, 1996) (holding that a bond's reference that the parties may institute legal proceedings in any court of competent jurisdiction was not cast in mandatory terms, and even if that reference created inconsistency in the terms of the bond, any ambiguities in the construction of contract language must be resolved in favor of arbitration).  Here, there is no dispute that the Contract contains a valid and enforceable arbitration clause which mandates that disputes shall be settled by arbitration.  Plaintiff is the beneficiary under the Bond and Jordan Residential and Safeco are joint obligees.  There is no dispute that the Bond specifically incorporates by reference the Contract and its terms – including the arbitration provision.  Because Plaintiff's claims arise out of and relate directly to the Bond (as they involve Jordan Residential's communications and relationship with Safeco and their obligations/actions under the Bond), the claim is due to be decided by arbitration.  Indeed, the Bond claims are tied directly to Contract performance; for instance, if Plaintiff is found to be in default under the Contract (i.e., Owner Default), based upon the express terms of the Bond, neither Safeco nor Jordan Residential would have any responsibilities under the Bond.

III.   **Conclusion**

In light of the foregoing, Defendant Safeco's Motion to Stay is **GRANTED** and the Jordan Defendants' Motion to Compel and Stay is **GRANTED.**[14]  All claims and defenses between Plaintiff and Defendants, arising out of or relating to the Contract and/or Bond are arbitrable, and must be submitted for adjudication in the pending arbitration.  See, e.g., West Point, 837 F.2d 1508; Dunn, 760 F. Supp. at 1482.  If Jordan Residential is found liable to Plaintiff in the ongoing arbitration, Safeco will be compelled to arbitrate the issues relating to the Bond and its obligations thereunder, because the Bond claims are tied directly to performance under the Contract.  Id.  It is **ORDERED** that this action be and is hereby **STAYED** pending resolution of the ongoing arbitration.  The Clerk of this Court is **DIRECTED** to close this file for statistical purposes.  Further, the parties are **DIRECTED** to file a Status Report in this case no later than **January 5, 2009.**

**DONE** and **ORDERED** this the 29th day of September, 2008.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[14]Plaintiff indicates that it intends to amend the complaint to add Jordan as a defendant in Counts six and eight.  These claims against Jordan would also be subject to arbitration.  See, e.g., Becker v. Davis, 491 F.3d 1292, 1303-1304 (11th Cir. 2007) (allowing a non-signatory to compel arbitration based on equitable estoppel, where the claims are intertwined with the contract obligations); MS Dealer, 177 F.3d at 948 (concluding that the lack of a signature to an arbitration agreement did not preclude invocation of the arbitration clause); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 756-757 (11th Cir. 1993) (providing that when the charges against a parent company and its subsidiary are based on the same facts and are "inherently inseparable," a court may refer claim against the parent to arbitration even though the parent is not formally a party to the arbitration agreement); Dunn, 760 F. Supp. at 1484 (forcing a construction lender to arbitrate tort claims even though it was not party to the contract between the project owner and contractor because the claims were based on the underlying contract which required arbitration).